UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LAWRENCE W. CAPRIOTTI, JACK M. )<br>HARGROVE, MICHEL D. THYFAULT, )<br>JAMES R. WALLWIN, and GEORGE J. )<br>STIMAC, )<br>)<br>Defendants. ) | Case No. 03 CR 779 |

## DEFENDANT JAMES WALLWIN'S SENTENCING MEMORANDUM

Defendant, James Wallwin, by his attorneys, Shelly B. Kulwin, Kulwin, Masciopinto & Kulwin, L.L.P., respectfully submits his sentencing memorandum in the above referenced matter.

### I. INTRODUCTION

For almost fifteen years, James Wallwin worked at InterCounty Title (IC) in what he thought was a well run company in an industry he had learned without any formal training or education. He enjoyed the job, the people he worked with and the income that allowed he and his wife to raise their children, Amanda and James.

In 1990, however, as Jim Wallwin candidly sets forth in his version of the offense (a copy of which is attached hereto as Exhibit A to this memorandum), he allowed himself to help facilitate what he believed at the time was the short term "borrowing" of funds to

1

cover up deficiencies in the personal trust accounts of Larry Capriotti and Jack Hargrove. While Capriotti and Hargrove assured him this was a short term solution and that the funds would be quicky returned, Jim Wallwin has regretted his decision to go along with their request ever since he took those actions.

In 1996, after realizing that Capriotti's and Hargrove's repeated assurances that they were going to repay all of the money they had improperly taken from IC out of profits from their real estate development projects were untrue, James Wallwin left IC unable to go along any further with their activities.

For the past approximately eight years, Jim Wallwin has endeavored to do all of which he was capable to mitigate the effects of his conduct. As the Special Agents charged with investigating the IC fraud stated, Wallwin was "extremely cooperative with authorities during the course of the investigation," both pre, and post-indictment, including assisting authorities "in reviewing and interpreting" accounting records regarding Capriotti's and Hargrove's unlawful activities. And as the government itself noted in its version of the offense:

> "The truthful information provided by defendant was <u>integral</u> to the indictment of this matter and played a <u>significant role</u> in the prosecution and conviction of both Jack Hargrove and Lawrence Capriotti, the two driving forces behind the offenses charged in this matter."

*Government's Version of the Offense* at p. 12 (emphasis supplied).

2

Indeed, as a result of those above noted factors, along with the facts that the government views Wallwin's role in the offense as minor and of limited duration, and that Wallwin withdrew from the scheme before it was discovered, the government is moving to depart from the low end of the 1995 Sentencing Guidelines and recommending that the Court sentence Mr. Wallwin below that aforementioned low end.

For reasons set forth below, James Wallwin respectfully urges the Court to employ the broad discretion now allowed it under the advisory guidelines and sentence him to probation or, at most, a period of home confinement.

## II. THE 1995, NOT 2007, SENTENCING GUIDELINES SHOULD BE APPLIED HERE

In determining which Sentencing Guideline to apply in a particular case, a district court should first consider the guidelines that were in effect at the time the offense occurred. 18 U.S.C. §3553(a)(4)(A)(ii). Moreover, the Seventh Circuit, post–*United States v. DeMaree*, 459 F.3d.791 (7th Cir. 2006), has interpreted *DeMaree* to give district courts broad discretion in sentencing and to specifically allow them to exercise that discretion to apply the guidelines in effect at the time the offense occurred, where as here, a sufficient and necessary sentence under 18 U.S.C. §3553(a) could be reached by applying the earlier guidelines that were more favorable to the defendant, and/or where it would lead to an unfair harsher sentence to do otherwise. *United States v. Jung*, 473 F.3d 837 (2007); *cf. United States v. Monti*, 477 F.Supp.2d 943 (N.D.Ill. 2007)(Holderman, C.J.)(rejecting government's argument that *DeMaree* represented a directive from the Seventh Circuit to apply the

3

sentencing guidelines extant at the time of sentencing); *United States v. Caputo*, 456 F.Supp.2d 970 (N.D.Ill. 2006)(Castillo,J.)(rejecting government's request to apply guidelines applicable at time of sentencing and applying earlier, more favorable guidelines).

In the instant case, the offense at issue occurred in 1995. As noted in the PSR, the applicable guidelines range from the offense conduct here under the 1995 sentencing guidelines would be 30-37 months. Conversely, the applicable guideline range under the current guidelines is 87-108 months. Clearly, the imposition of a sentence here pursuant to the current guidelines would be unduly harsh and unfair to Jim Wallwin and, as noted directly below, unnecessary to impose a "sufficient and necessary sentence" under 18 U.S.C. §3553(a).

Jim Wallwin's role in this offense was, as noted in the PSR and the government's version of the offense, minor. It was also of limited duration. In addition, he withdrew from IC on his own and not in response to fear of an impending prosecution. Further, upon being charged, Wallwin cooperated extensively. And, as noted *supra* at pg. 2, his cooperation was extremely valuable.

Jim Wallwin's role in the offense and the extent, quality and importance of his cooperation in this matter, support the conclusion that a sufficient and necessary sentence clearly can be imposed employing the 1995, and not the 2007, sentencing guidelines. Moreover, the government does not disagree: it recommended that the Court employ the November 1, 1995 Edition of the Guidelines Manual to determine Wallwin's sentence.

*Government Version* at pps. 8-9. Accordingly, James Wallwin respectfully urges the Court to employ the 1995 guidelines with respect to his sentencing.

### III. THE COURT'S DEPARTURE FROM THE 1995 GUIDELINES PURSUANT TO THE GOVERNMENT'S DEPARTURE MOTION, SHOULD BE TO A TERM OF PROBATION OR, AT MOST, SOME PERIOD OF HOME CONFINEMENT

Pursuant to the plea agreement, the government intends to move this Court to depart from the applicable guidelines to a sentence below the low end of the applicable guidelines – which, as noted above, under the 1995 guidelines, is 30 months. This Court should exercise its discretion in this regard to impose a sentence of probation or, at most, some period of home confinement.

Jim Wallwin sets forth in his version of the offense, as best as he can explain, both how he allowed himself to engage in the conduct that has led him here for sentencing and the serious impact his conduct has already had on his life. There is no question that Mr. Wallwin is deeply remorseful about his conduct and recognizes the wrongful nature of it. Having said that, however, and without in any way minimizing the nature of his conduct, there are an extraordinary number of reasons which support a probationary sentence here:

    a.    <u>Cooperation</u> – Wallwin's cooperation, as noted by both the Special Agents charged with investigating the case and the government attorneys charged with prosecuting it, was beyond routine – it was extensive, broad ranged and critical to the successful prosecution of the "two main driving

5

forces" behind this fraud – Capriotti and Hargrove.[1]

b. <u>Duration and Voluntary Withdrawal</u> – There is no dispute among the parties that James Wallwin's participation in this scheme was "limited" in duration and that he withdrew from it not because of an impending criminal investigation, but simply because he knew it was wrong and could no longer be a part of it.

c. <u>Lack of Benefit</u> – Here, again, despite the gargantuan size of the fraud that ultimately occurred here, the government agrees that James Wallwin got nothing out of it except the salary he was earning as an employee of IC, which he abandoned long before almost ninety percent (90%) of the losses were incurred. Moreover, as Wallwin notes in his own version of the offense, and as his wife points out in the PSR, he turned down a significant severance package when he left because he knew it would be wrong to accept it under the prevailing conditions at that time.

d. <u>Impact to Date</u> – While it is an overstatement to assert that James Wallwin has already been incarcerated over the past five plus years while this matter has been pending, it would not be untrue to say that he has been substantially confined by it and that his life has been severely altered by

---

[1]This, of course, is in addition to Wallwin's extensive cooperation in the civil litigation that was ongoing these past years.

6

it. He has spent significant time working with the government, civil attorneys and his own attorneys as part of his cooperation; he has been unable to find and/or accept employment that could have allowed him to move forward because of the uncertainty of his future and, of course, he has been plagued by his own remorse for his actions and the consequences of those actions. As noted in the PSR, as a result of the past several years, Jim Wallwin and his family stand on the precipice of bankruptcy with no visible means of a future income at hand. A sentence of incarceration would only serve to unduly exacerbate these difficulties for him, his wife and his children.

e. Context of His Life – As a result of the errors he made while working at IC, Jim Wallwin dramatically altered his life for the worse. But there can be no question that his conduct was aberrant from all that he was before, after and even during this conduct. As his friends point out, Jim Wallwin has been an exceptionally honest, caring and responsible person. *See Letters*, attached hereto as Exhibit B. And as his wife noted in the PSR, he has been an exemplary husband and father who is still deeply loved by her, their daughter Amanda and son James (Photographs of James Wallwin's family are attached hereto as Exhibit C).

7

In sum, while it is true that most if not all persons charged with so-called "white collar crimes" appear before the court with an otherwise exemplary life, it can also be said that few, if any, have so demonstrably acted to vitiate their wrongful conduct, profited less from such conduct, abandoned such conduct without the threat of criminal investigation and have a family that is in such a dire financial situation it will be devastated by any period of incarceration Jim Wallwin would now have to serve. Based on all of these factors, James Wallwin respectfully urges the Court to take all of these factors into consideration and sentence him to a period of probation or at most, some period of home confinement during which he could begin efforts to obtain employment and support his family.

### IV. THE COURT SHOULD EXERCISE THE DISCRETION ALLOWED IT UNDER THE ADVISORY GUIDELINES TO SENTENCE JAMES WALLWIN TO PROBATION OR, AT MOST, SOME PERIOD OF CONFINEMENT

The advisory nature of the Guidelines give this Court broad discretion to impose any sentence it deems fair and reasonable under all of the circumstances. As noted *supra* at pgs. 1-7, there are numerous reasons for the Court to exercise its discretion in this regard and not impose a sentence of any incarceration. Wallwin respectfully only briefly adds the following additional points in support of a non-incarcerative sentence. Generally, a sentence is designed to punish, deter and/or rehabilitate the offender. There is no question that neither of these latter two factors are in play here. Jim Wallwin has been gone from IC for over twelve years and has led an exemplary life since that

8

time. Further, it is unquestioned that he presents no danger of recidivism. Thus, a sentence would only serve to punish him. Given all of the above factors, it is respectfully submitted that such punishment would do nothing to further the ends of justice and would be unduly punitive. Accordingly, James Wallwin respectfully requests the Court to impose a sentence of probation and/or a period of home confinement that will allow him to obtain new employment, support his family and begin to firmly put these events behind him.

By: /s/ Shelly B. Kulwin

Shelly B. Kulwin
KULWIN, MASCIOPINTO & KULWIN, LLP
161 North Clark Street, Suite 2500
Chicago, IL 60601
(312) 641-0300